# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

**Michael Anderson,**                                  **Civil No. 04-4284 (DSD/SRN)**

                                    **Plaintiff,**

                                                        **REPORT AND RECOMMENDATION**

**v.**

**Siemens Business Services, Inc., a subsidiary of
Siemens AG and Siemens Corporation USA,
Siemens AG, Siemens Corporation USA, and
Alan Gonchar, individually and in his capacity as
officer and managing agent of Siemens Business
Services, Inc.**

                    **Defendants.**

---

Christopher R. Walsh, Esq., on behalf of Plaintiff

Dana L. Rust, Esq. and Jason M. Hedican, Esq. on behalf of Defendants Siemens Business Services,
Inc. and Siemens Corporation USA

---

        The above-entitled matter came before the undersigned United States Magistrate Judge on

April 8, 2005 on Defendant Siemens Business Services, Inc. (SBS) and Siemens Corporation USA's

(SC's) Motions to Dismiss (Doc. No. 2) and to Strike (Doc. No. 24).  Despite having no pending

motions before the Court, in his memorandum in opposition to SBS and SC's motions Plaintiff: (1)

requests that this Court "appoint APS International to perform international service on Siemens AG in

Germany and Alan Gonchar (who may be in Canada)"; (2) "moves . . . for an additional 60 days to

serve these two parties or any other parties which the Court deems have not been effectively served";

(3) "moves to amend his complaint to add additional defamatory verbal statements made by

Defendants"; and (4) seeks costs and attorney fees associated with rendering personal service of the

Summons and Complaint of the action.  (Doc. No. 20 at 2-3, 17.)  This matter has been referred to the

undersigned for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and Local Rule 72.1.

## I.      BACKGROUND

In 2000, Siemens Business Services (SBS) acquired a company that employed Plaintiff as a

salesman.  (Doc. No. 1 ¶ 24.)  Plaintiff continued to work in the salesman position until he was fired on

May 7, 2002.  (Doc. No. 3 at 2.)  Plaintiff claims his termination was the result of age discrimination

and retaliation at the hand of Alan Gonchar, Plaintiff's supervisor at the time of his termination.  (Doc.

No. 1 ¶¶ 37-61.)  Plaintiff filed a charge of age discrimination against Defendants with the Equal

Employment Opportunity Commission (EEOC) and Minnesota Department of Human Rights (MDHR)

on November 27, 2002.  (Doc. No. 1 ¶ 63.)[1]  The EEOC issued Plaintiff a Notice of Right to Sue

dated July 7, 2004 and the parties agree that the MDHR issued a dismissal letter dated August 10,

2004.  (Doc. No. 4 Ex. 3.)  Plaintiff filed his Complaint in this action on September 29, 2004.  (Doc.

No. 1.)  Plaintiff claims he served the Summons and Complaint on SBS twice: personally on SBS's

registered agent on September 29, 2004 and by securing a waiver of personal service on October 6,

2004.  (Doc. No. 20 at 15; Doc. No. 3 at 3.)  He claims he served SC once via the waiver of service

method.

Plaintiff levels the following claims against Defendants: (1) age discrimination in violation of the

federal Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 et seq. (2000); (2)

---

[1] Defendants SBS and SC contend in their brief that the charge was filed on November 22, 2002.  (Doc. No. 20 at 3.)  Plaintiff did not attach a copy of the charge to his Complaint.  For purposes of this motion, the Court adopts the date in Plaintiff's Complaint.

retaliation in violation of the ADEA; (3) age discrimination in violation of the Minnesota Human Rights

Act (MHRA), Minn. Stat. § 363A et seq. (2004); (4) age discrimination in violation of the Minnesota

Dismissal for Age Act (MDAA), Minn. Stat. § 181.81 (2004); (5) aiding and abetting discrimination,

obstruction, and reprisal in violation of the MHRA; (6) aiding and abetting discrimination, obstruction,

and reprisal in violation of the MDAA; (7) defamation; and (8) tortious interference with contract.

(Doc. No. 1.)  Plaintiff asserts the Court has jurisdiction over the above claims pursuant to 28 U.S.C. §

1331 (federal question jurisdiction) by way of his federal ADEA claims.  (Doc. No. 1 ¶ 11.)[2]  For

redress of each of the alleged wrongs inflicted upon him by Defendants, Plaintiff seeks compensatory

and special damages for lost wages, income, benefits, insurance, damage to his reputation and standing

in the community, past and future emotional distress, mental anguish, physical manifestations of

emotional distress, consequential and incidental damages, punitive and treble damages, a civil penalty

awarded to the State of Minnesota, treble compensatory damages, reinstatement, injunctive relief

prohibiting discriminatory practices, retaliation, and aiding and abetting discrimination, attorney fees and

costs, and termination of the corporate defendants' public contracts.  (Id. Prayer for Relief ¶¶ 1-5.)

SBS and SC move to dismiss all but the ADEA (first two) claims enumerated above.  (Doc.

No. 2.)  Plaintiff's response to the motion to dismiss was due January 31, 2005.  His response was

docketed on February 1, 2005.  (Doc. No. 19.)  Because his response was improperly filed, the Clerk

of Court entered the following text in the docket entry: "Document filed in error, incorrect event code."

(Id. docket text entry.)  Plaintiff filed another response, containing additional material and exhibits, on

---

[2] Plaintiff does not cite any pendent jurisdictional authority, such as 28 U.S.C. § 1367, for his
state law claims.

February 9, 2005 (Doc. No. 20) without leave of the Court.  SBS and SC now move to strike

Plaintiff's February 9, 2005 response and its supporting documentation.  (Doc. No. 24).

## II.    PARTIES' POSITIONS

### A.    <u>Motion to Dismiss</u>

#### 1.    <u>MDAA Claims</u>

SBS and SC first attack Plaintiff's MDAA claims as untimely because, according to SBS and

SC, the statute of limitations for MDAA claims is one year.  (Doc. No. 3 at 3-5.)  Because the MDAA

has no express statute of limitations, they argue that the statute of limitations of the most analogous state

statute, according to them—the MHRA—should be applied.  Second, they contend that the MDAA

does not recognize a cause of action for aiding and abetting discrimination, obstruction, or reprisal, so

even if timely this purported MDAA claim should be dismissed.  (<u>Id.</u> at 5-6.)  Plaintiff responds that

MDAA claims have a two-year (or three-year for intentional discrimination), not a one-year, statute of

limitations period.  (Doc. No. 20 at 12.)  In support for his position, Plaintiff cites Minn. Stat. §

541.07(5) which provides that actions "for the recovery of wages or overtime or damages, fees or

penalties accruing under any federal or state law respecting the payment of wages or overtime or

damages, fees or penalties" shall be commenced within two years "or if the nonpayment is willful and

not the result of mistake or inadvertence, the limitation is three years."  Plaintiff also defends his position

that aiding and abetting discrimination is a valid cause of action under the MDAA because, "the MDAA

should be interpreted to allow the same rights and remedies as the MHRA, because Plaintiff met the

procedural requirements of the MHRA" (<u>Id.</u> at 3).

## 2.    **MHRA Claims**

SBS and SC argue that Plaintiff's MHRA claims are untimely because Plaintiff failed to "commence" (i.e., under the Minnesota Rules of Civil Procedure, serve the summons in) his action within forty-five days after receiving notice of the MDHR's dismissal of his administrative charge—in this case, by September 29, 2004.[3]  (Id. at 6-7.)  SBS and SC represent and Plaintiff concedes the summons was served on them on October 6, 2004, seven days after the expiration of the MHRA's statute of limitations, when they waived personal service of the summons and accepted it by mail.  (Id. at 3, 7; Doc. No. 4 Ex. 4.)  Further, SBS concedes Plaintiff personally served its registered agent but argues such service occurred on September 30, 2004, a day late (See Doc. No. 33 Ex. B.)

Plaintiff attempts to rebut SBS and SC's attack on his MHRA claims by arguing that he timely and personally served SBS through their registered agent on September 29, 2004.  (See Doc. No. 23 Ex. C.)  Alternatively, Plaintiff contends that the Federal Rules of Civil Procedure apply to his pendent state law claims and that the federal rules do not require service of the Summons and Complaint prior to the conclusion of the statute of limitations period.  He also contends that the Complaint was timely served on SBS and SC because they waived their objection to improper service when they waived personal service on October 6, 2004.  (Doc. No. 20 at 18-19.)  Finally, according to Plaintiff, the MHRA is subject to equitable tolling and should be tolled because SBS and SC allegedly delayed the action by engaging in settlement discussions and had actual notice of the Complaint on September 29,

---

[3] The MHRA allows for five days for receipt of the dismissal notice, meaning the Plaintiff had to commence his action within fifty days after August 10, 2004 (i.e., by September 29, 2004).  See Minn. Stat. § 363A.33, subd. 1(3).

2004.  (Id.)  Because SBS & SC waived personal service of the Summons and Complaint and now

seek to challenge the timeliness of the service, Plaintiff moves in his response brief for costs of service

and attorneys fees pursuant to Federal Rule of Civil Procedure 4(d)(5).  (Id. at 17.)

### 3.      Defamation Claim

SBS and SC assert the comments Plaintiff cites as defamatory are not actionable as a matter of

law because the comments are a matter of opinion and not fact or are not sufficiently specific.  (Id. at

7.)  Plaintiff responds that, even if opinions on their face, Gonchar's comments can be reasonably

understood to state facts.  Plaintiff's Complaint cites the following comments made by Gonchar and

directed toward Plaintiff as allegedly defamatory: "fat boy," "the old guy," telling him Polo logo dress

shirts were only for "old people," telling him "You can't teach an old dog new tricks," and saying

Plaintiff "drives like an old man."  (Doc. No. 1 ¶ 40, 43.)  He also moves to add additional allegedly

defamatory comments contained in his March 29, 2002 performance plan (Doc. No. 4 Ex. 1) and in

emails apparently authored by Gonchar.  (Id. at 23-26.)  These additional comments include statements

that allegedly defame Plaintiff's sale, enterprise selling, consultative selling, senior level interaction, and

prospecting skills as well as his sales "pipeline" and account focus.  (Id. at 8, 24.)

### 4.      Tortious Interference Claim

Finally, SBS and SC argue that, assuming it is leveled at all of the named defendants in this

action, Plaintiff's tortious interference claim as against SBS and SC should be dismissed because

employers cannot contractually interfere with their own employment contracts.  (Id. at 8-9.)  In

response, at the motion hearing, Plaintiff represented that his tortious interference claim is brought only

against Gonchar and not SBS or SC and that he wished to amend his Complaint to remove SBS and

SC as defendants named in the tortious interference count.

    **B.**    <u>**Motion to Strike**</u>

In support of their motion to strike, SBS and SC argue that Plaintiff's untimely February 9, 2005 response was substantially modified from his initial, also untimely filed, brief that was deemed improperly filed by the Clerk of Court.  (Doc. No. 29.)  In light of his prior request for an extension to file a response, SBS and SC contend that Plaintiff's disregard for the Court's deadlines warrants granting their requested relief—that Plaintiff's February 9, 2005 response and its supporting documentation be stricken.  (<u>Id.</u>)  Plaintiff counters that he has had difficulty with filing documents electronically, is making efforts to ensure proper and timely future filings, and that the February 9, 2005 response brief was substantially modified from the February 1, 2005 brief for various technical and other reasons.  (Doc. No. 30.)

**III.**    **DISCUSSION**

    **A.**    <u>**Standard of Review**</u>

When considering a motion to dismiss for failure to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6), the Court "must assume that all the facts alleged in the complaint are true" and generally construe the complaint in the light most favorable to the plaintiff. <u>E.g.</u>, <u>Coleman v. Watt</u>, 40 F.3d 255, 258 (8th Cir. 1994).  Although "the complaint must contain sufficient facts, as opposed to mere conclusions, to satisfy the legal requirements of the claim to avoid dismissal," <u>DuBois v. Ford Motor Credit Co.</u>, 276 F.3d 1019, 1022 (8th Cir. 2002), a court "may dismiss [the] complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."  <u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73 (1984).

**B.**      **SBS and SC's Motions to Strike (Doc. No. 24)**

As an initial matter, the Court denies SBS and SC's Motion to Strike (Doc. No. 24).  Plaintiff

has articulated his ongoing efforts to file documents timely and in the required electronic format.  The

Court accepts Plaintiff's representations and finds good cause shown for the untimely filings, including

the February 9, 2005 response brief.  The Court, however, will train a more skeptical eye on any future

filing errors and rule accordingly.

**C.**      **SBS and SC's Motions to Dismiss (Doc. No. 2)**

The Court grants in part and denies in part SBS and SC's Motion to Dismiss (Doc. No. 2) for

the reasons set forth below.

**1.**      **Statute of Limitations for MDAA Claims**

The MDAA provides:

> It is unlawful for any private sector employer to refuse to hire or employ, or to discharge,
> dismiss, reduce in grade or position, or demote any individual on the grounds that the
> individual has reached an age of less than 70 . . . .

Minn. Stat. § 181.81, subd. 1.  Where a violation of the MDAA occurs, a court may grant only three

forms of relief.  The Court: (1) "may enjoin further violations," (2) order reinstatement, and/or (3) order

"compensation for any period of unemployment resulting from the violation together with actual and

reasonable attorneys fees, and other costs incurred by the plaintiff."  Minn. Stat. § 181.81, subd. 2(b).

As noted by the parties, the MDAA does not contain an express statute of limitations provision.

If the MDAA is deemed to have a one-year statute of limitations, as SBS and SC argue, Plaintiff's

claims are barred.  In the absence of such an express period, Minnesota courts have a venerable

tradition of applying the period of the most analogous state law cause of action.  See Mowry v.

8

McQueen, 83 N.W. 348, 350 (Minn. 1900) ("What is a reasonable time may, even if there be no statute, be determined by reference to analogous cases in respect to which the limitation is fixed by express statute."); In re Gragg's Estate, 47 N.W. 543, 544 (Minn. 1890) ("Following the example of courts of equity, the time allowed by the statutes of limitations to actions to recover such claims, being most nearly analogous, suggests the proper rule as to the time within which claims must be presented."); see e.g., Portlance v. Golden Valley State Bank, 405 N.W.2d 240, 241-43 (Minn. 1987) (applying statute of limitations applicable to analogous state law claim to claim with no express statute of limitations).  SBS and SC contend that the MHRA is most analogous to the MDAA, given that both create a cause of action for age-based terminations.  The application of the MHRA statute of limitations is especially appropriate here, assert SBS and SC, because Plaintiff's Complaint blurs the distinctions between the two statutes and claims relief under the MDAA claims such as termination of public contracts, a civil penalty awarded to the state, and punitive damages—forms of relief not available under the MDAA.  Plaintiff counters that Minn. Stat. § 541.07(5), which provides for a two-year statute of limitations for lost wage claims and a three-year statute of limitations for willful withholding of wages, covers his wage claims.

Non-binding case law provides support for each parties' position.  Compare Jan. 21, 2005 Transcript of oral ruling in Fox v. Siemens Bus. Servs, Inc., Civ. No. 04-4393 JMR/FLN, at 25 ¶¶ 17-19 (D. Minn. 2005) (in record at Doc. No. 33 Ex.A) ("[B]ecause the MDAA's damages are limited to lost wages, courts have applied a two-year statute of limitations."); Kyllo v. Farmers Coop. Co., 723 F. Supp. 1332, (D. Minn. 1989) ("[Plaintiff] alleges a claim for lost wages under Minn. Stat. § 181.81. The limitations period for such a claim is two years."); Portlance v. Golden Valley State Bank, 405

N.W.2d 240, 241-43 (Minn.1987) (affirming generally that a lost wages claim arising from a wrongful discharge is a contract theory with a limitations period set by § 541.07(5)); Lecy v. Sage Co., 460 N.W.2d 102, 104 (Minn. Ct. App. 1990) ("The statute of limitations for claims brought under Minn. Stat. § 181.81 (1986) is two years."), rev. denied (Oct. 25, 1990) with Jacobs v. United Steel Workers of Am., Civ. No. 00-1625 DWF/AJB, 2002 WL 87078, at *2, *4 (D. Minn. 2002) (dismissing both MHRA and MDAA claims because Plaintiff failed to file them within one-year and did not set forth a prima facie case of age discrimination), aff'd, No. 02-1518, 51 Fed. Appx. 184, 2002 WL 31500658, *1 (8th Cir. 2002) (per curiam). The Court concludes the balance of the law favors adopting the standard set forth in Minn. Stat. § 541.07(5) which provides a two-year statute of limitations generally and a three-year statute of limitations where the plaintiff proves the nonpayment of wages was willful. The Court, however, adopts the Fox v. Siemens Bus. Servs, Inc. court's approach that Plaintiff's recovery under the two or three year statute of limitations period for his MDAA claims should be limited to the relief set forth in Minn. Stat. § 541.07(5). See Jan. 21, 2005 Transcript of oral ruling in Fox v. Siemens Bus. Servs, Inc., Civ. No. 04-4393 JMR/FLN, at 25 ¶¶ 17-19 (D. Minn. 2005) (in record at Doc. No. 33 Ex.A). Thus, the Court recommends denying SBS and SC's motion to dismiss Plaintiff's MDAA age discrimination claim found in Count I of the Complaint but also recommends limiting the relief available under that claim to those enumerated in Minn. Stat. § 541.07(5).

## 2.    **Causes of Action Allowed Under the MDAA**

The MDAA provides:

It is unlawful for any private sector employer to refuse to hire or employ, or to discharge,

10

dismiss, reduce in grade or position, or demote any individual on the grounds that the individual has reached an age of less than 70 . . . .

Minn. Stat. § 181.81, subd. 1.  Plaintiff's efforts to construe the above text to include a cause of action for aiding and abetting discrimination, obstruction, and reprisal are misplaced.  No such cause of action exists.  <u>See</u> Transcript of Jan. 21, 2005 proceeding in <u>Fox v. Siemens Business Serv. Inc.</u>, Civ. No. 04-4393 JMR/FLN at 24 ¶¶ 20-23 (D. Minn. 2005) (in record at Doc. No. 33 Ex.A) ("Unlike the far more expansive MHRA, there is no cause of action for aiding and abetting, obstruction, reprisal or age-based harassment.")  Thus, the Court recommends granting SBC and SC's motion to dismiss Plaintiff's aiding and abetting discrimination claim brought pursuant to the MDAA and found in Count II of the Complaint.

### 3.  <u>Application of State Procedural Requirements to the MHRA Claims</u>

Minnesota Rule of Civil Procedure 3.01 provides that a civil action is "commenced" against each defendant:

> (a) when the summons is served upon that defendant, or
> (b) at the date of acknowledgement of service if service is made by mail, or
> (c) when the summons is delivered to the sheriff in the county where the defendant resides for service; but such delivery shall be ineffectual unless within 60 days thereafter the summons is actually served on that defendant or the first publication thereof is made.

Minn. R. Civ. P. 3.01.  The commencement rule "govern[s] the procedure in the district courts of the State of Minnesota in all suits of a civil nature."  Minn. R. Civ. P. 1.  The state rules for the service of process—and not the federal rules—also apply to state claims in actions based upon federal question jurisdiction for purposes of determining whether the claim runs afoul of the state statute of limitations. <u>See</u> <u>Henderson v. United States</u>, 517 U.S. 654, 657 (1996) ("In a federal-court suit on a state-created

right, however, a plaintiff must serve process before the statute of limitations has run, if state law so

requires for a similar state-court suit."); Appletree Square I, Ltd. v. W.R. Grace & Co., 29 F.3d 1283,

1286 (8th Cir. 1994) (noting that "the rationale" of applying state commencement rules to state claims

in federal diversity cases "does not change 'solely because of the fortuity' that [the plaintiff] pleaded a

federal claim along with state claims" (quoting Walker v. Armco Steel Corp., 446 U.S. 740, 753

(1980) (alteration in original)); see e.g., Alholm v. Am. Steamship Co., 144 F.3d 1172, 1176 (8th Cir.

1998) (applying state commencement rules to negligence claim pendent to federal Jones Act claim);

Anderson v. Unisys Corp., 47 F.3d 302, 309 (8th Cir. 1995) (applying state commencement rules to

MHRA age discrimination claim pendent to federal ADEA claim), cert. denied, 516 U.S. 913 (1995);

McKenzie v. Lunds, Inc., 63 F. Supp. 2d 986, 1002 (D. Minn. 1999) ("Since [s]tate law

commencement procedures apply to the Plaintiff's pendent [MHRA] claims, service of the Complaint is

required to satisfy the timing requirements of the MHRA.")

   The MHRA provides that "a person may bring a civil action . . . within 45 days after receipt of

notice that the commissioner has dismissed a charge."  Minn. Stat. § 363A.33, subd. 1(1) (emphasis

added).  While the phrase "bring a civil action" is not defined in the statute, the Eighth Circuit has read

the MHRA provision as synonymous with the "commencement of the action" language used in

Minnesota Rule of Civil Procedure 3.01.  Anderson v. Unisys Corp., 47 F.3d at 309.  This

interpretation is consistent with the MHRA's own interchangeable use of the phrases.  Compare Minn.

Stat. § 363A.33, subd. 1(1) ("[A] person may bring a civil action . . . within 45 days after receipt of

notice that the commissioner has dismissed a charge . . . .) with Id. subd. 4 ("[T]he court may appoint

an attorney for the person and may authorize the commencement of the action without payment of fees .

. . .")  Therefore, the Court concludes that the state commencement rules apply to Plaintiff's pendent MHRA claims.  The application of the state commencement rules does not necessarily mandate the dismissal of Plaintiff's claims, however.  The specific allegations of service for each defendant must be considered to determine whether the MHRA claims were timely filed.

### a.   Defendant Siemens Business Services

In support of Plaintiff's position, Plaintiff's counsel has produced an affidavit indicating that he served SBS's registered agent on September 29, 2004.  (See Doc. No. 23 Ex. C.)  SBS contests Plaintiff's counsel's affidavit, argues the personal service occurred on September 30, 2004, and marshals in support of its position a "Notice of Service of Process" provided by its registered agent which indicates it was served on September 30, 2004 (See Doc. No. 33 Ex. B).  SBS raises a fact dispute which precludes dismissal.  At the present time, given the current posture of the case and the motion now before the Court, the Court denies the motion to dismiss Plaintiff's MHRA claims as to SBS.

### b.   Defendant Siemens Corporation USA

Unlike SBS, SC was not personally served with the Summons and Complaint.  Therefore, the only service date applicable to SC is the date of the waiver of service of process, October 6, 2004.  As this date falls after September 29, 2004, the Court finds that Plaintiff did not timely serve SC.  Plaintiff's argument that SC somehow waived its right to raise the substantive defense that Plaintiff failed to follow the state commencement rules as they affect the applicable statute of limitations is not persuasive.  The waiver form indicates that SC "retain[ed] all defenses or objections to the lawsuit or to the jurisdiction or venue of the court except for objections based on a defect in the summons or in the service of the

13

summons." (Doc. No. 20 Ex. G-2.)  Such a waiver does not prohibit SC from now arguing Plaintiff's suit ran afoul of the applicable statute of limitations.  See e.g., Leavens v. Foster, No. 97-3054, 132 F.3d 43, 1997 WL 755149, at *2 (10th Cir. 1997) (noting that, by waiving service, defendant did not waive the right to raise a statute of limitations defense based upon the untimely commencement of the action).  Further, after a review of Plaintiff's arguments in favor of tolling the statute of limitations, the Court finds no basis for such tolling.  Therefore, the Court recommends dismissing Plaintiff's MHRA claims against Siemens Corporation USA.

### 4.    Defamation Claim

Under Minnesota law, a statement is defamatory if it is (1) false, (2) communicated to a third party, and (3) tends to harm the claimant's reputation and lower the claimant in the estimation of the community.  Bolton v. Dept. of Human Servs., 540 N.W.2d 523, 525 (Minn. 1995).  "Whether a statement can be interpreted as stating facts or can be proven false is a question of law."  Geraci v. Eckankar, 526 N.W.2d 391, 397 (Minn. Ct. App. 1995), rev. denied (Mar. 14, 1995), cert. denied, 516 U.S. 818 (1995).

In most cases, "[s]lander is not actionable without proof of special damages unless the defamatory statement falls within one of the categories of slander per se."  4 Minnesota Practice Series, Jury Instruction Guides CIVSVF 50.91, Use Note (4th ed. 1999) [hereafter Jury Instr. Guides]; see Anderson v. Kammeier, 262 N.W.2d 366, 372 (Minn. 1977) (considered and decided en banc), reh'g denied (Jan. 9, 1978).  Comments are slander per se where they impute: (1) a crime; (2) a loathsome disease; (3) unchastity in a woman; (4) or "words directly disparaging and tending to prejudice and injure a person in his office, profession, trade, or business."  Larson v. R.B. Wrigley Co., 235 N.W.

393, 394  (Minn. 1931); see Anderson, 262 N.W.2d at 372.  Where a defendant's statements fall into

one of these four categories, general damages are presumed and no harm to reputation need be shown.

Becker v. Alloy Hardfacing & Eng'g Co., 401 N.W.2d 655, 661 (Minn. 1987).  In reviewing allegedly

slanderous words in the first three categories, "it is a question for the court as to whether a crime,

disease, or type of sexual misconduct make the slander actionable per se."  Jury Instr. Guides CIVSVF

50.91, Use Note.  As to the fourth category, where the words relate to the person in his professional

capacity, "[i]t is a question for the jury as to whether the spoken language charges the plaintiff with

conduct or characteristics or a condition incompatible with the proper conduct of the plaintiff's

business, trade, profession, office, or calling."  Id.

> Additionally,
>
> To constitute slander per se on the basis that a statement affects a person's conduct of
> business, trade, or profession, the words must be particularly harmful to plaintiff in her
> business, and general disparagement is not enough.  Anderson, 262 N.W.2d at 372.
> Whether a statement constitutes slander per se depends both on the occupation of the
> plaintiff and the particular statement.  Id.  "[T]he remarks must relate to the person in his
> professional capacity and not merely as an individual without regard to his profession."  Id.

Moss v. Advance Circuits, Inc., 981 F. Supp. 1239, 1251 (D. Minn. 1997).

While comments addressing matters of public concern or aimed at public figures invoke some

level of First Amendment protection, words addressing matters of purely private concern aimed at

private individuals are not protected under the First Amendment and are reviewed under Minnesota

common law.  Weissman v. Sri Lanka Curry House, Inc., 469 N.W.2d 471, 471 (Minn. Ct. App.

1991).  The Minnesota courts have espoused divergent views as to whether it matters if an allegedly

defamatory comment is characterized as an opinion or a statement of fact in matters of purely private

concern.  One view is that where no public concern is involved, Minnesota common law applies and

"Minnesota common law makes no distinction between 'fact' and 'opinion'" in analyzing defamatory

claims concerning private issues.  Id.  Another view, however, is that some protection for opinion

statements still exists, even in the private context.  See Lund v. Chi. & N.W. Transp. Co., 467 N.W.2d

366, 370 (Minn. Ct. App. 1991) ("[W]hen the statements, such as those made . . . during a meeting

regarding employee grievances, are clearly opinions, the state's interest fades and the first amendment

predominates."), rev. denied (June 19, 1991).  Recent state court decisions tend to favor the latter view

but remain less protective of opinions that imply actual facts.  See e.g., Roberts v. Minn. State Colleges

and Univ., Nos. A03-528, A03-1053, 2004 WL 727175, at *3 (Minn. Ct. App. Apr. 6, 2004) ("To

be defamatory, a statement must imply actual facts."); Bebo v. Delander, 632 N.W.2d 732, 740

(Minn. Ct. App. 2001) (applying four factors to determine whether the statements at issue were "one[s]

of fact or opinion"), rev. denied (Oct. 16, 2001).

Specifically, in determining whether "a statement is actionable" under the recent trend,

Minnesota courts have looked to factors articulated in Janklow v. Newsweek, Inc., 788 F.2d 1300,

1302-03 (8th Cir. 1986), cert. denied, 479 U.S. 883 (1986).  The Janklow criteria are the statement's

(1) specificity and precision; (2) verifiability; (3) literary and social context; and (4) public context.

Geraci, 526 N.W.2d at 397.

While the comments Plaintiff alleges in the Complaint do not appear to be actionable, the Court

recommends denying SBS and SC's motion to dismiss for the reasons discussed below in considering

Plaintiff's request for leave to amend his defamation claim.

### 5.     Tortious Interference Claim

At the motion hearing, Plaintiff represented that his tortious interference claim (Count IV of the Complaint) was not leveled at SBS or SC, and he sought leave of the Court to amend his claim to remove both defendants from Count IV.  Thus, the Court recommends dismissing this claim against SBS and SC.

**B.     Plaintiff's Request for Relief**

Plaintiff makes a number of requests for action by the Court in his responsive brief.  In the interest of expediting this action, the Court considers each below.

**1. Extension of Time to Effect Service on Gonchar and Siemens AG**

First, Plaintiff "moves . . . for an additional 60 days to serve these two parties or any other parties which the Court deems have not been effectively served."  (Doc. No. 20 at 3.)  This request is apparently based upon the assumption that service in a foreign country must be effected within 120 days after the filing of the Complaint as is the case with domestic service.  The 120-day rule, however, does not apply to service in a foreign country.  Fed. R. Civ. P. 4(m) (noting that the 120-day rule "does not apply to service in a foreign country."); Nylok Corp. v. Fastener World Inc., 396 F.3d 805, 807 (7th Cir. 2005) ("The explicit language of this rule makes it very clear that the 120-day limit is inapplicable in cases involving service in a foreign country."); Lucas v. Natoli, 936 F.2d 432, 432 (9th Cir. 1991) (holding the plain text of former Rule 4(j), which is now Rule 4(m) "makes the 120-day service provision inapplicable to service in a foreign country"), cert. denied, 502 U.S. 1073 (1992).

Plaintiff, however, must use diligence in attempting to effect the foreign country service to qualify for the exemption to the 120-day rule, see Montalbano v. Easco Hand Tools, Inc., 766 F.2d 737, 740 (2d Cir. 1985), as the period of service allowed is not indefinite.  Nylok, 396 F.3d at 807

17

("Because district courts need to be able to control their dockets, we have stated that the amount of time allowed for foreign service is not unlimited.")  Given the above discussion, the Court recommends denying Plaintiff's requested relief as moot.  The Court, however, recommends requiring Plaintiff to serve Alan Gonchar and Siemens AG within fifteen days of the date of the district court's order in this matter.[4]

## 2.    Appointment of International Service Agency

Plaintiff requests that this Court "appoint APS International to perform international service on Siemens AG in Germany and Alan Gonchar (who may be in Canada)."  (Doc. No. 20 at 3.)  Federal Rule of Civil Procedure 4(f) permits several methods of service of a summons upon individuals in a foreign country that do not involve court intervention.  Plaintiff does not provide any justification why Court intervention is necessary in the present action.  Therefore, the Court recommends denying Plaintiff's requested relief.

## 3.    Request for Costs and Fees for Personally Serving SBS

Plaintiff seeks costs and attorney fees associated with rendering personal service of the

---

[4] If Plaintiff is unable to effect service upon Gonchar and Siemens AG by July 1, 2005 and wishes dismissal without prejudice of his claims against them, the proper avenue for Plaintiff to take is to seek a voluntary dismissal of his action against these defendants pursuant to Federal Rule of Civil Procedure 41(a).  If the Plaintiff fails to do so, the Court will take the necessary steps to meet its mandatory obligation set forth in Federal Rule of Civil Procedure 1 "to secure the just, speedy, and inexpensive determination of every action," such as to, sua sponte, dismiss the action for failure to prosecute under Federal Rule of Civil Procedure 41(b).  See O'Rourke Bros. Inc. v. Nesbitt Burns, Inc., 201 F.3d 948, 953 (7th Cir. 2000) (noting that "a 41(b) dismissal is not beyond the power of the court.")

Summons and Complaint of the action pursuant to Federal Rule of Civil Procedure 4(d)(5).  (Id. at 17.)

The rule Plaintiff cites applies where a defendant refuses to waive personal service of the Summons and

Complaint.  Here, SBS and SC did waive such service.  Furthermore, Plaintiff's counsel admits he

personally served SBS because he "wanted to be doubly sure of service."  (Doc. No. 21 at 3 ¶ 5.)  He

personally served SBS, according to his version of events, on the same day he presented the waiver of

service to SBS and SC, a waiver they executed.  Finally, as noted above, by waiving service, neither

SBS nor SC waived their right to raise the statute of limitations as a defense, so there is no misdeed to

punish.  Thus, the Court recommends denying Plaintiff's request for costs and fees in connection with

the personal service of the Summons and Complaint.

### 4.   Request for Leave to Amend Complaint to Add Additional Allegedly Defamatory Statements

Plaintiff "moves to amend his complaint to add additional defamatory verbal statements made

by Defendants," statements contained in a performance plan for Plaintiff, and emails authored by

Gonchar  (Doc. No. 20 at 8, 23-26.)  Federal Rule of Civil Procedure 15(a) provides that leave to

amend "shall be freely given when justice so requires."  Moreover, "denial of leave to amend pleadings

is appropriate only in those limited circumstances in which undue delay, bad faith on the part of the

moving party, futility of the amendment, or unfair prejudice to the non-moving party can be

demonstrated."  Roberson v. Hayti Police Dep't, 241 F.3d 992, 995 (8th Cir. 2001).  Even if the

adverse party would suffer some prejudice if the motion to amend were granted, the anticipated

prejudice must be balanced against the hardship to the moving party if the motion is denied.  Buder v.

Merrill Lynch, Pierce, Fenner & Smith, Inc., 644 F.2d 690, 694 (8th Cir. 1981).  Ultimately, the

decision to grant or not grant leave to amend is entrusted to the sound discretion of the trial court.

<u>Niagara of Wis. Paper Corp. v. Paper Indus. Union-Mgmt. Pension Fund</u>, 800 F.2d 742, 749 (8th Cir. 1986).

Given Plaintiff's representations concerning these statements the Court recommends granting Plaintiff leave to amend his Complaint to add these the allegedly defamatory statements.

Therefore, based upon the foregoing,

**IT IS HEREBY RECOMMENDED that:**

1. Defendant Siemens Business Services, Inc. and Siemens Corporation USA's Motion to Strike (Doc. No. 24) be **DENIED**.

2. Defendant Siemens Business Services, Inc. and Siemens Corporation USA's Motion to Dismiss (Doc. No. 2) be **GRANTED in part and DENIED in part** as follows:

   a. The motion be denied as to Plaintiff's MDAA claim contained in Count I of the Complaint but Plaintiff's available relief under the claim be limited to that enumerated in Minn. Stat. § 541.07(5).

   b. The motion be granted as to Plaintiff's MDAA claim for aiding and abetting discrimination, obstruction, and reprisal claim found in Count II of the Complaint and the claim be dismissed with prejudice as to all of the above-captioned defendants.

   c. The motion be denied as to Plaintiff's MHRA claims against Defendant Siemens Business Services, Inc.

   d. The motion be granted as to Plaintiff's MHRA claims against Defendant

Siemens Corporation USA.

e.     The motion be denied as to Plaintiff's defamation claim.

f.     The motion be granted as to Plaintiff's tortious interference claim and the claim

be dismissed with prejudice as to Siemens Business Services, Inc. and Siemens

Corporation USA.

3.     Plaintiff's request for leave to amend his Complaint to add additional allegedly

defamatory statements be **GRANTED** and that Plaintiff be ordered to file an Amended

Complaint within 10 days of the date of the district court's order that reflects the effect

of the district court's order on the Complaint.

4.     Plaintiff's request for an extension of time to serve process on Defendants Alan

Gonchar and Siemens AG be **DENIED as moot** and Plaintiff be ordered to serve said

defendants within 15 days of the date of the district court's order.

5.     The remainder of relief requested by Plaintiff be **DENIED**.

DATED:     June 8, 2005

 s/ Susan Richard Nelson
SUSAN RICHARD NELSON
United States Magistrate Judge

Under D. Minn. L.R. 72.1(c)(2) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by June 24, 2005, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Any party wishing to oppose such objections must file and serve all parties with its response. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.